UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

SUE FERGUSON DAVIS,

    Plaintiff,

v.                                                  CIVIL ACTION NO. 2:11-cv-00879

BAYER AG,
BAYER CROPSCIENCE AG,
BAYER CROPSCIENCE HOLDING INC., and
BAYER CROPSCIENCE LP,

and

WEST VIRGINIA PAVING, INC.

and

ADISSEO MANUFACTURING, INC. and
ADISSEO USA, INC.

    Defendants.

**DEFENDANT BAYER CROPSCIENCE HOLDING INC.'S AND
BAYER CROPSCIENCE LP'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION TO REMAND**

Defendants Bayer CropScience Holding Inc. and Bayer CropScience LP ("BCS Defendants"), by counsel, respectfully submit this Response in Opposition to Plaintiff's Motion to Remand:

## I.    PROCEDURAL HISTORY

The Plaintiff originally filed this civil action on October 12, 2011 in the Circuit Court of Kanawha County, West Virginia, which was assigned Civil Action No. 11-C-1838, and styled *Sue Davis Ferguson v. Bayer AG, Bayer CropScience AG, Bayer CropScience Holding*

*Inc., and Bayer CropScience LP; and West Virginia Paving, Inc.; and Adisseo Manufacturing, Inc. and Adisseo USA, Inc.* On or about October 12, 2011, the Corporation Service Company, acting as statutory agent for the BCS Defendants, received notice that a Complaint had been filed in the above styled matter and an action commenced in the Circuit Court of Kanawha County, West Virginia. BCS Defendants jointly and timely filed a Notice of Removal on November 10, 2011[1] to the Southern District of West Virginia based on diversity jurisdiction. (*See* Docket No. 1). Defendants Adisseo Manufacturing, Inc. and Adisseo USA, Inc. (collectively "Adisseo Defendants") filed their consent to the removal on November 10, 2011. (*See* Docket Nos. 2, 3). As indicated by the Plaintiff in her Motion to Remand, Defendants Bayer AG and Bayer CropScience AG have not been served with a Complaint. (*See* Docket No. 20, pp. 1, 2).[2] Because the BCS Defendants are asserting that Defendant West Virginia Paving, Inc. (hereinafter "West Virginia Paving") was fraudulently misjoined and/or fraudulently joined, its consent to removal was unnecessary.[3] The Plaintiff filed a Motion to Remand on November 28, 2011 with an accompanying Memorandum of Law in Support. (*See* Docket Nos. 19, 20).

## II. ARGUMENT

A civil action is appropriately removed under 28 U.S.C. § 1441 when (1) there is complete diversity of citizenship between the plaintiffs and the defendants, and (2) the amount in

---

[1] BCS Defendants timely amended their Notice of Removal on November 14, 2011. (*See* Docket No. 8).

[2] The Plaintiff indicates in fn. 1 of her Motion to Remand that she concedes Defendants Bayer AG and Bayer CropScience AG will consent to removal if and when they are properly served under the Hague Convention. (*See* Docket No. 20, fn. 1).

[3] "As a general rule, removal requires the consent of all co-defendants. In cases involving alleged improper or fraudulent joinder of parties . . . application of this requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists." *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.1993). "To avoid such a nonsensical result, 'a removing party need not obtain the consent of a co-defendant that the removing party contends is improperly joined.'" *Justice v. Branch Banking and Trust*, 2009 WL 853993 *4 (S.D. W. Va. Mar. 24, 2009) citing *Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007); *see also Balzik v. County of Dauphin*, 44 F.3d 209, 213 n. 4 (3d Cir. 1995) ("The unanimity rule may be disregarded where . . . a defendant has been fraudulently joined."); *Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir. 1983) ("A party fraudulently joined to defeat removal need not join in a removal petition, and is disregarded in determining diversity of citizenship."); *Palmquist v. Conseco Med. Ins. Co.*, 128 F.Supp.2d 618, 621 n. 2 (D. S. D. 2000) ("the unanimity rule may be disregarded . . . where a defendant has been fraudulently joined.").

controversy exceeds $75,000.00, exclusive of interest and costs. While removal jurisdiction is strictly construed, *Mulcahy v. Columbia Organic Chemils Co.*, 29 F.3d 148, 151 (4th Cir. 1994), federal courts "should be cautious in denying defendants access to a federal forum because remand orders are generally unreviewable" and should "do more than simply point jurisdictional traffic in the direction of state courts." *See Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 988 F.Supp. 913, 914-15 (D. Md. 1997); *17th Street Associates, LLP v. Market Int'l Ins. Co. Ltd*, 373 F.Supp.2d 584, 592 (E.D. Va. 2005).

The Plaintiff does not contest that the amount in controversy in this action exceeds the jurisdictional minimum[4] or the diversity of citizenship requirement with regard to BCS Defendants or Adisseo Defendants.[5] Hence, BCS Defendants will focus on diversity of citizenship with regard to the Plaintiff, BCS Defendants, and West Virginia Paving, demonstrating that this Court has complete subject matter jurisdiction over this case. Where a court finds that a party has been improperly joined, the residency of that party must be disregarded for diversity jurisdiction purposes. *See Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).

The doctrines of fraudulent misjoinder and fraudulent joinder are "two distinct legal doctrines that provide exceptions to the well-pled complaint rule as it applies to removal based on diversity jurisdiction by allowing courts to disregard the citizenship of certain parties."

---

[4] Even if the Plaintiff were to contest the amount in controversy, the Plaintiff demands in the ad damnum clause of her Complaint "judgment in her favor against all Defendant, jointly and severally, that she be awarded compensatory damages in an amount necessary to compensate her fully, for past and future suffering and treatment, and that she be awarded punitive damages in an amount necessary to deter Defendants' misconduct, and misconduct by others in the chemical industry, in the future." A defendant must show by a preponderance of the evidence that the monetary value of the relief sought in the complaint exceeds $75,000.00, exclusive of interest and costs. *Sayre v. Potts*, 32 F. Supp.2d 881 (S.D. W. Va. 1999) (establishing the "more likely than not rule" for determining that removal on diversity grounds is appropriate in cases where the complaint does not state a specific damages amount). For purposes of removal, the amount in controversy is determined by considering the judgment that would be entered if the Plaintiff prevailed on the merits of his case as it stands at the time of removal. *Green v. Metal Sales Mfg. Corp.*, 394 F. Supp. 864 (S.D. W. Va. 2005). Based on the allegations in the Complaint, it is clear that the amount in controversy in this case exceeds the sum of $75,000.00, exclusive of interest and costs.
[5] *See* Docket No. 20, p. 2.

*Wyatt v. Charleston Area Medical Center, Inc.*, 651 F.Supp.2d 492, 496 (S.D. W. Va. 2009). Fraudulent misjoinder "is an assertion that claims against certain defendants, while provable, have no real connection to the claims against other defendants in the same action and were only included in order to defeat diversity jurisdiction and removal." *Id.* (citing *Ashworth v. Albers Medical, Inc.*, 395 F.Supp.2d 395, 409-10 (S.D. W. Va. 2005)). Fraudulent joinder, on the other hand, "is applicable where a defendant seeking removal argues that other defendants were joined when there is no possible successful cause of action against those defendants or where the complaint pled fraudulent facts. *Id.* (citing *Ashworth*, 395 F.Supp. at 403).

BCS Defendants assert, and the applicable case law supports, that Defendant West Virginia Paving was fraudulently misjoined, or in the alternative, fraudulently joined, by the Plaintiff in order to defeat diversity jurisdiction.

A.   **Fraudulent Misjoinder**

Fraudulent misjoinder, or procedural misjoinder, occurs when a plaintiff "attempts to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard." *Conk v. Richards & O'Neil, LLP*, 77 F.Supp2d 956, 971 (S.D. Ind. 1999); *see also Wyatt*, 651 F.Supp.2d at 498. A minority of courts require "something more than mere misjoinder of parties . . . to find fraudulent misjoinder." *Wyatt*, 651 F.Supp.2d at 496; *see also Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996) (alluding to an "egregious" standard), abrogated on other grounds by, *Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000).

The Fourth Circuit has not addressed whether, in finding fraudulent misjoinder, a district court must make a finding of misjoinder along with a finding of egregiousness or a bad

faith attempt to defeat diversity. "However, the majority of district courts that have considered the issue have rejected the need to make an additional finding of egregiousness." *Stephens v. Kaiser Foundation Health plan of the Mid-Atlantic States, Inc.*, No. RBD-11-1603, 2011 WL 3652775 (D.Md. August 18, 2011) ("This Court finds persuasive the line of cases arising in the district courts of West Virginia holding that "egregiousness" is not material to the fraudulent misjoinder analysis … adding what would be in essence a state-of-mind element to the procedural misjoinder inquiry would overly complicate what should be a straightforward jurisdictional examination.") (internal citations omitted); s*ee Burns v. W.S. Life Ins. Co.*, 298 F.Supp.2d 401, 403 (S.D.W.Va. 2004); *Grennell v. W.S. Life Ins. Co.*, 298 F.Supp.2d 390, 397 (S.D.W.Va. 2004); *Hughes v. Sears, Roebuck and Co.*, No. 2:09–CV–93, 2009 WL 2877424, at *5 (N.D.W.Va. Sept. 3, 2009); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. 07–1487, 2007 WL 2572048, at *3 (D.Minn. Aug.30, 2007); *Greene v. Wyeth*, 344 F.Supp.2d 674 (D.Nev.2004); *In re Rezulin Prods. Liab. Litig.*, 168 F.Supp.2d 136 (S.D.N.Y. 2001).

Regardless of whether "egregiousness" must be shown, "[t]he prevailing standard is whether there is a reasonable possibility that a state court would find that [a plaintiff's] claims against one set of defendants were properly joined with the claims against the other defendants." *Wyatt*, 651 F.Supp.2d at 496 (citing *Conk*, 77 F.Supp2d at 971). The West Virginia Rules of Civil Procedure regarding permissive joinder are substantially similar to their federal counterparts. *See Grennell v. Western Southern Life Ins. Co.*, 298 F.Supp.2d 390, 397 (S.D. W. Va. 2004) (citing *Anderson v. McDonald*, 170 W.Va. 56, 289 S.E.2d 729, 733 (1982) (relying on federal case law in interpreting Rule 20)). Rule 20(a) of the West Virginia Rules of Civil Procedure states that "[a]ll persons may be joined in one action as defendants if there is asserted

against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of *the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants* will arise in the action." W.Va. R. Civ. P. 20 (2011). "The rule imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted out of the same transaction or occurrence; and [(2)] some question of law or fact common to all the parties will arise in the action. Both of these requirements must be satisfied in order to sustain a party joinder under Rule 20(a)." *Ashworth*, 395 F.Supp.2d at 411 (citing Charles A. Wright & Arthur R. Miller & Mary Kay Kane, 7 Federal Practice and Procedure § 1653, (3d ed. 2001)).

Rule 21 provides that misjoinder of parties is not grounds for dismissal. W. Va. R. Civ. P. 21; F.R.C.P. 21. In the context of determining diversity jurisdiction, the appropriate course of action for a federal district court is to sever a plaintiff's cause of action against a misjoined party and remand it to the state court in which the action was initiated. The federal district court retains jurisdiction over the remaining diverse parties. *See Ashworth*, 395 F.Supp.2d at 411.

1. **Same Transaction or Occurrence**

The first prong of Rule 20(a) requires the Plaintiff to show that her right to relief from all Defendants arises out of the same transaction or occurrence. While the test under the first prong "does not require 'absolute identity of events' and 'would permit all reasonably related claims for relief by or against different parties to be tried under a single proceeding,'" *Ashworth*, 395 F.Supp.2d at 411 (citing *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983)), the mere fact that a plaintiff alleges that multiple defendants may have committed similar acts that caused injury to the plaintiff does not satisfy the requirement that those acts arose out of the

same transaction or occurrence. *See, e.g. Grennell*, 298 F.Supp.2d at 398. The test to determine whether the right to relief arises out of the same transaction, occurrence, or series of transactions or occurrences should be "similar to the logical relationship test under Rule 13(a) in which all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence . . . ." *Wyatt*, 651 F.Supp.2d at 497 (citing *Ashworth*, 395 F.Supp.2d at 411-12).

Application of the "logical relationship test" in the context of determining whether claims arise from the same transaction or occurrence for the purpose of misjoinder analysis can be shown by the following: A claim against one defendant has a logical relationship to a claim against another defendant if it *arises* out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the claim against the first defendant rests activates additional legal rights in a party plaintiff against additional defendants that would otherwise remain dormant. *See gen., State ex rel. Taylor v. Nibert*, 640 S.E.2d 192, 196 (W.Va. 2006) (citing *Revere Copper and Brass Inc. v. Aetna Casualty and Surety Co.*, 426 F.2d 709, 715 (5th Cir. 1970)).[6]

In *Grennell*, a case in the Southern District of West Virginia, multiple plaintiffs alleged that they were fraudulently induced by various individual insurance agent defendants into purchasing certain life insurance policies from a large insurance company. *Id.* at 398. In looking

---

[6] The logical relationship test in the context of determining whether claims arise from the same transaction or occurrence is: "[A] claim has a logical relationship to the original claim if it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant." *Id.*

at whether the plaintiffs' claims were fraudulently misjoined,[7] Judge Chambers held that because each purchase was allegedly induced by different misrepresentations, the fact that the plaintiffs were fraudulently induced to purchase the same thing "does not satisfy the requirements of Rule 20(a)." *Id.*; *see also Insolia v. Phillip Morris, Inc.*, 186 F.R.D. 547, 549 (W.D. Wis. 1999) ("The general consensus . . . is that Rule 20 demands more than a bare allegation that all plaintiffs are victims of a fraudulent scheme perpetrated by one or more defendants; there must be some indication that each plaintiff has been induced to act by the same misrepresentation."); *Papagiannis v. Pontikis*, 108 F.R.D. 177, 179 fn.4 (N.D. Ill. 1985) (analogizing claims of two plaintiffs separately fraudulently induced to purchase oil wells to the equally separate plights of "two persons who fall, wholly independently, for the classic 'pigeon drop' swindle two weeks apart."). The court found that the plaintiffs did not allege common misrepresentations; rather they alleged that they were separately induced by individual insurance agents. *Id.* "Even though similar (perhaps identical) policies were involved, each plaintiff will need to specifically prove reliance on a misrepresentation made by separate insurance agents." *Id.*

In *Wyatt*, a plaintiff and her husband filed an action in state court against a medical device manufacturer and medical providers who implanted the device in the plaintiff during surgery. *Wyatt*, 651 F.Supp.2d at 494. The medical device manufacturer filed a notice of removal based on diversity jurisdiction under the theory of fraudulent misjoinder.[8] This Court determined that all of plaintiff's claims against the manufacturer of the medical device and the medical providers who implanted it arose out of the same transaction or occurrence. *Id.* at 498

---

[7] Numerous other courts have stated that the fraudulent joinder doctrine and analysis equally applies to the improper joinder of defendants and plaintiffs. *See Wise v. Travelers Indemnity Co.*, 192 F.Supp.2d 506, 511-513 (N.D. W. Va. 2002); *In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002); *Cal. Dump Truck Assn. v. Cummins Engine Co.*, 24 Fed.Appx. 727, 729 (9th Cir. 2001); *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996); *Ferry v. Bekum Am. Corp.,* 185 F.Supp.2d 1285, 1291 (M.D.Fla. 2002); *In re Rezulin Prods. Liab. Litig.,* 168 F.Supp.2d 136, 147-49 (S.D.N.Y. 2001). "No federal court has determined that the fraudulent joinder doctrine is not as applicable to plaintiffs as it is to defendants." *Grennell,* 298 F.Supp.2d at 395 -96 (S.D. W. Va. 2004).
[8] The medical providers were not of diverse citizenship to the plaintiffs. *Id.* at 494.

("All of these claims for relief arise out of the same occurrence: Ms. Wyatt's surgery and the after effects of that surgery."). This Court noted that the "medical injuries [were] intertwined with the claims against [the medical device manufacturer], *not separate and distinct*. *Id.* (emphasis added).

Here, the Plaintiff has not even alleged that her claims arise out of the same transaction or occurrence, or set of transactions or occurrences. Other than to generally state that West Virginia Paving "regularly releases toxins," the Plaintiff does not identify a specific occurrence in which West Virginia Paving allegedly released toxins. This stands in stark contrast to the specific claims pled concerning the release of toxins from the "chemical" plants. For example, in paragraph 16 of the Complaint, under the heading "October 13, 2009 Release of Chemicals in Institute, WV," the Plaintiff states:

> On October 13, 2009 Defendants negligently released into the atmosphere of Institute, WV one or more toxic gases which Plaintiff ingested while walking in her residential neighborhood. Plaintiff, a retired school teacher living in the Institute community in close proximity of the <u>Defendants' chemical facilities</u>, regularly took long walks in the community. On October 13, 2009 as she took her daily walk, Plaintiff's heart began to beat very irregularly. Very shortly thereafter she began to smell an offensive odor which caused her to believe that a toxic chemical had been released. Shortly afterwards she heard numerous sirens in the area. She was unable to continue walking, and sought refuge in a nearby building. <u>She called Defendant's chemical plant</u> to ask what was released and what she should do, but no one answered her call. She called the West Virginia Department of Environmental Protection to report an apparent chemical release and to request that they investigate. Thereafter she observed vans with license plates signifying state ownership in the area.

(Compl. ¶ 16) (emphasis added). No matter how the Plaintiff wishes to characterize this factual allegation, it is clearly against those "Defendants" with some relation to "chemical facilities" or a "chemical plant:" i.e. BCS Defendants and Adisseo Defendants. In fact, the Plaintiff

{C2211541.1}  9

distinguishes West Virginia Paving from the "chemical" Defendants in the very next paragraph: "West Virginia Paving, Inc. *is among the industrial operators* who regularly release toxins, including volatile organic compounds into the area surrounding Institute, WV." (Compl. ¶ 17) (emphasis added). The Plaintiff then proceeds in paragraph 17 to discuss, in depth, a "release" reported by "Defendant Adisseo [sic] Corporation" "[o]n or about October 25, 2009" without any mention of any involvement on the part of West Virginia Paving. The Plaintiff then identifies in detail the specific injuries sustained from the alleged October 13, 2009 release from the chemical plant. (*See* Compl., ¶ 18). Plaintiff then wholly attributes these injuries to the "chemical" Defendants: "Plaintiff further alleges that **the negligent operation of Defendants' chemical plant at Institute, WV was the proximate cause of the injuries sustained on October 13, 2009 and thereafter**, for which she is entitled to damages in an amount necessary to compensate her fully." (Compl. ¶ 20) (emphasis added). "Defendants numerous acts of negligence in the operation of their chemical facility in Institute, WV were the result of gross negligence, recklessness and intentional misconduct . . . ." (Compl. ¶ 21). The Plaintiff alleges no involvement by West Virginia Paving in any release on October 13, 2009 that allegedly caused her injuries.[9]

As in *Grennell*, simply because the Plaintiff alleges that all Defendants "released" toxic chemicals ("routinely" for West Virginia Paving and specific dates (October 13, 2009 and October 25, 2009) for the BCS and Adisseo Defendants) does not mean she has satisfied the requirements of Rule 20(a). On the contrary, the fact that the Plaintiff specifically identified

---

[9] The Plaintiff has and will undoubtedly continue to argue that the fact that she includes "and other facilities" in various other causes of action (*see, e.g.* Compl. ¶¶ 23, 27, 28) alleviates the fact that she does not allege that West Virginia Paving was involved in the October 13, 2009 that caused her injuries; this assertion flies in the face of the Complaint.

{C2211541.1}                                                    10

certain releases for the BCS and Adisseo Defendants to the exclusion of West Virginia Paving further bolsters the argument the alleged releases were separate and distinct occurrences.

Unlike the circumstances in *Wyatt* (alleged malfunction of an implanted medical device and complications from the surgery where the device was implanted), there is no causal or factual link between any alleged "release" by the BCS or Adisseo Defendants and West Virginia Paving—the Plaintiff's Complaint identifies the alleged releases as independent from one another. Furthermore, as *Wyatt* noted, there is a necessity for the injuries to "intertwine" with the claims; they cannot be separate and distinct. However, as noted, the only physical injuries the Plaintiff identifies in the Complaint are wholly attributed to the "negligent operation of Defendants' chemical plant at Institute, WV was the proximate cause of the injuries sustained on October 13, 2009 and thereafter . . . ." (Compl. ¶ 20).

Using the logical relationship test, it is clear that the specific claims of releases of toxic chemicals against the BCS and Adisseo Defendants do not arise out of the same aggregate of operative facts as the general claims that West Virginia Paving "routinely releases toxic chemicals:" (1) the same aggregate of alleged operative facts cannot serve as the basis for claims against BCS/Adisseo Defendants and West Virginia Paving—the alleged releases are admittedly separate and distinct and exclusive of each other, and the Plaintiff's physical injuries are attributed solely to the "chemical" Defendants; and (2) the aggregate core of facts upon which the claim against the BCS and Adisseo Defendants does not activate additional legal rights in the Plaintiff to bring causes of action against West Virginia Paving—there is no causal connection between any alleged release of BCS/Adisseo Defendants and West Virginia Paving, nor do BCS/Adisseo Defendants have any relationship that would create additional legal rights.

Accordingly, as the Plaintiff has not shown that her right to relief against BCS/Adisseo Defendants and West Virginia Paving arise out of the same occurrence or set of occurrences, the Plaintiff has fraudulently misjoined West Virginia Paving, and those claims against West Virginia Paving should be severed and remanded with this Court retaining jurisdiction over the remaining parties.

### 2. Common Question of Law or Fact

Although it is well settled that the Plaintiff must meet *both* prongs of Rule 20(a) in order to properly join a defendant, the Plaintiff cannot meet either the first or second prongs. The second prong of Rule 20(a) requires the Plaintiff to show that some question of law or fact common to all the parties will arise in the action. "The second prong of Rule 20(a) requires that the claims have commonality of law or fact . . . It should be noted that Rule 20(a) does not require that every question of law or fact in the action be common among the parties; rather, the rule permits party joinder whenever there will be at least one common question of law or fact." *Wyatt*, 651 F.Supp.2d at 497 (citing *Ashworth*, 395 F.Supp.2d at 411-12).

However, the court in *Grennell*, noted that "[c]ommon issues of law does not mean common issues of an area of the law." *Grennell*, 298 F.Supp.2d at 398 (citing *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638, 640 (D. Nev. 2001)). "For example, while two or more persons could sue a common defendant for Title VII discrimination, based upon the same policies or conduct, all plaintiffs could not join together in one large lawsuit, to sue all defendants for Title VII discrimination." *Id.* Though plaintiffs may have a claim arising under the same area of law against a common defendant, "the facts that form the bases for those claims are unique to each plaintiff." *Id.* The court held that "[i]n the absence of allegations that

plaintiffs were misled by the same misrepresentation, joinder of the Plaintiffs' fraud claims is not permitted under Rule 20(a)." *Id.*

This Court in *Wyatt*, found a common question of law or fact between the claims against the medical device manufacturer and the medical providers because the plaintiffs were "seeking to recover for the same damages from all defendants." *Wyatt*, 651 F.Supp.2d at 498. This Court reasoned that "the defendants will almost certainly debate which defendant is most responsible for the injuries. The injuries themselves, the extent of the injuries, and what caused those injuries are common questions of fact that must be resolved as to both the [medical providers] and [the medical device manufacturer]." *Id.*

Using the standard set forth in *Grennell* and in the context of the misjoinder of a defendant, West Virginia Paving, the mere fact that the Plaintiff alleges causes of action for negligence, gross negligence and recklessness; strict liability; private nuisance; public nuisance; battery; and medical monitoring against "Defendants" does not mean that there is a common issue of law. As alluded to in *Grennell*, though the Plaintiff may have a claim arising under the same area of law against a multiple defendants, the facts that form the bases for those claims are unique to each defendant. Unlike the plaintiff's injuries that were attributed to all defendants in *Wyatt*, as noted above, the injuries[10] in the Plaintiff's Complaint were alleged to have been caused on October 13, 2009 by the "chemical" Defendants, or BCS and Adisseo Defendants—the Plaintiff does not allege West Virginia Paving caused her injuries.

Simply asserting similar claims among multiple defendants does not meet the requirement of "one common question of law or fact." Because there is no allegation that all

---

[10] "18. Since October 13, 2009 Plaintiff has suffered a range of physical ailments including but not limited to, substantially diminished pulmonary capacity to the extent that she is no longer capable of taking the extended walks she formerly took [sic] on a daily basis in the Institute community. Plaintiff has suffered pain to her eyes, vaginal bleeding and other gastro-intestinal ailments. Plaintiffs injuries have caused her to suffer extreme pain, including anxiety, and to incur costs in the past, which costs will continue in the future." (Compl. ¶ 18).

{C2211541.1}    13

defendants caused the same harm or that the facts for the bases of each claim are similar, the Plaintiff has failed to meet the second prong under Rule 20(a). Accordingly, the Plaintiff has fraudulently misjoined West Virginia Paving, and those claims against West Virginia Paving should be severed and remanded with this Court retaining jurisdiction over the remaining claims and parties.

Regarding the "egregiousness" standard in determining whether the Plaintiff fraudulently misjoined West Virginia Paving, should this Court require "something more than mere misjoinder," again, the Court need look no further than paragraph 17 of the Plaintiff's Complaint: "West Virginia Paving, Inc. is among the industrial operators who regularly release toxins, including volatile organic compounds into the area surrounding Institute, WV." Other than identifying the fact that West Virginia Paving is a corporate citizen of the state of West Virginia (Compl. ¶ 7)[11], **the Plaintiff makes no further *factual* allegations against West Virginia Paving in the Complaint**. Even the remainder of paragraph 17 states a wholly unrelated allegation against "Defendant Adisseo [sic] Corporation." The Plaintiff was able to identify specific times, dates, locations, and substances in her allegations of "releases" against BCS and Adisseo Defendants. If the Plaintiff cannot identify the when, where, why, how, and what West Virginia Paving allegedly did, other than to say it "regularly release[d] toxins" then including it as a defendant in this particular action is "something more than mere misjoinder."[12]

---

[11] "7. Defendant West Virginia Paving, Inc. is a corporation organized in the state of West Virginia with its principal place of business in Nitro, Kanawha County, West Virginia. Defendant West Virginia Paving, Inc.'s operations result in the release of volatile organic compounds in the area, including Institute, West Virginia." (Compl. ¶ 7).

[12] Plaintiff's argument in her Motion to Remand (Docket No. 20, pp. 5-6) that West Virginia Paving is included in the all-encompassing "Defendants" in the specific causes of action does not cure the lack of any substantive factual allegation in the Complaint; rather, the Plaintiff makes bald legal conclusions and just asserts them against "Defendants." Again, just "lumping" West Virginia Paving in with "Defendants" does not mean that its joinder is proper.

The Plaintiff quite simply added West Virginia Paving as corporate West Virginia citizen to defeat diversity jurisdiction.

Accordingly, as the Plaintiff cannot show that her right to relief against all defendants arises out of the same transaction or occurrence, or that her claims involve common issues of law or fact, this Court should sever and remand the claims against West Virginia Paving and retain jurisdiction over the remaining claims and defendants based on diversity jurisdiction.

### B. Fraudulent Joinder

In the alternative, the Plaintiff's Motion to Remand should be denied simply because the Plaintiff has failed to state a claim against West Virginia Paving or identify anything outside the pleadings to indicate a cause of action exists. Under the doctrine of "fraudulent joinder," a defendant may remove an action to federal court when it is clear that the plaintiff has joined a non-diverse defendant solely for the purpose of defeating diversity. *Triggs v. John Crump Toyota, Inc*., 154 F.3d 1284, 1287 (11th Cir. 1998). To establish that a non-diverse defendant has been fraudulently joined, the defendant must prove:

> That there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

*Marshall v. Manville Sales Corp*., 6 F.3d 229, 233 (4th Cir. 1993) (quoting *B., Inc. v. Miller Brewing Co*., 663 F.2d 5454, 549 (5th Cir. 1981)).

A defendant must show that the plaintiff cannot establish a claim against the non-diverse defendant, even after resolving all issues of fact in favor of the plaintiff. *Ashworth v. Albers Medical, Inc*., 395 F.Supp.2d 395, 403 (S.D. W. Va. 2005) (citing *Marshall*, 6 F.3d a 232-33). The claim need not ultimately succeed to defeat removal, only the possibility of right to relief need to be asserted. 28. U.S.C. § 1441(c).

Nonetheless, a "finding of fraudulent joinder is warranted when the record before the court demonstrates either that 'no cause of action is stated against the non-diverse defendant, or in fact no cause of action exists. In other words, a joinder is fraudulent if there is no real intention to get a joint judgment and there is no colorable ground for so claiming." *Ashworth*, 395 F.Supp.2d at 403 (quoting *AIDS Counseling & Testing Cntrs. v. Group W Television, Inc*., 903 F.2d 1000, 1003 (4th Cir. 1990) (internal citations omitted)).

As previously discussed, the Plaintiff has failed to articulate a legitimate claim against West Virginia Paving. Throughout the Complaint, the Plaintiff distinguishes between the cause of actions directed solely at the BCS and Adisseo Defendants, and those directed at the Defendants collectively. In the negligence and public nuisance claims, the Plaintiff refers specifically to the "the operation of *their* chemical facility in Institute, West Virginia" and "operation of *their* chemical manufacturing facility," alluding to the BCS and Adisseo Defendants as the "chemical" Defendants. (Compl. ¶¶ 20, 31-34). Likewise, the Plaintiff's battery and medical monitoring causes of actions refer specifically to the alleged release of toxic vapors on October 13, 2009 and October 25, 2009 at the facility operated by the BCS Defendants. (Compl. ¶¶ 36, 38-39). Conversely, the strict liability and private nuisance claims refer broadly to the "operation of a chemical production and *other facilities for the production of materials*" and insinuate wrongdoing on behalf of all of the Defendants, not just BCS and

Adisseo Defendants. (Compl. ¶¶ 23, 25-28) (emphasis added). Again, the Plaintiff wholly attributes her injuries to BCS and Adisseo Defendants: "Plaintiff further alleges that the negligent operation of Defendants' chemical plant at Institute, WV was the proximate cause of the injuries sustained on October 13, 2009 and thereafter . . . ." (Compl. ¶ 20).

Unquestionably, the Plaintiff's sole purpose for joining West Virginia Paving was to defeat diversity jurisdiction. The Plaintiff does not assert a cause of action against West Virginia Paving, nor can she identify anything outside the record to indicate that a cause of action against West Virginia Paving exists. Accordingly, the Plaintiff's Motion to Remand should be denied.

### III. CONCLUSION

For these reasons, Defendants Bayer CropScience Holding Inc. and Bayer CropScience LP respectfully request that this Court find that this matter was properly removed to the United States District Court for the Southern District of West Virginia under 28 U.S.C. § 1441. Accordingly, Defendants Bayer CropScience Holding Inc. and Bayer CropScience LP ask this Court to sever and remand the respective claims against Defendant West Virginia Paving, Inc. to the Circuit Court of Kanawha County and retain jurisdiction over the remaining diverse parties, or in the alternative, deny the Plaintiffs' Motion for Remand in total.

BAYER CROPSCIENCE HOLDING INC. and
BAYER CROPSCIENCE LP,

Defendants,

BY COUNSEL:

/s/ Thomas J. Hurney
Thomas J. Hurney, Jr., Esquire (WVSB #1833)
Michael M. Fisher, Esquire (WVSB #4353)
Ryan E. Voelker, Esquire (WVSB #11159)
JACKSON KELLY PLLC
500 Lee Street, East, Suite 1600
P.O. Box 553
Charleston, WV 25322
(304) 340-1000
*Counsel for Bayer CropScience Holding Inc. and Bayer CropScience LP*

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

**SUE FERGUSON DAVIS,**

    **Plaintiff,**

v.                                                      **CIVIL ACTION NO. 2:11-cv-00879**

**BAYER AG,**
**BAYER CROPSCIENCE AG,**
**BAYER CROPSCIENCE HOLDING INC.,**
**and BAYER CROPSCIENCE LP,**

**and**

**WEST VIRGINIA PAVING, INC.**

**and**

**ADISSEO MANUFACTURING, INC. and**
**ADISSEO USA, INC.**

    **Defendants.**

## **CERTIFICATE OF SERVICE**

    I, Thomas J. Hurney, Jr., counsel for Defendants Bayer CropScience Holding Inc. and Bayer CropScience LP, hereby certify that on the 12th day of December, 2011, I electronically filed the foregoing **"Defendants Bayer CropScience Holding Inc.'s and Bayer CropScience LP's Response in Opposition to Plaintiff's Motion to Remand"** with the Clerk of the Court using the CM/ECF system, and served the foregoing by the same method, addressed as follows:

William V. DePaulo, Esquire  
179 Summers Street, Suite 232  
Charleston, West Virginia 25301  
*Counsel for Plaintiff*

Norman Daniels, Esquire  
Nicholas R. Stuchell, Esquire  
P.O. Box 1433  
Charleston, WV 25325  
*Counsel for West Virginia Paving, Inc.*

{C2211541.1}

/s/ Thomas J. Hurney, Jr.
THOMAS J. HURNEY, JR. (WVSB #1833)